UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

IN RE: ALL YOU, LLC                                                      CASE NO. 5:10-bk-74049
     DEBTOR-IN-POSSESSION                                   CHAPTER 11

PLAN OF REORGANIZATION
OF
ALL YOU, LLC

PART I

Summary Classification of Claims & Length of Plan

Four (4) classes of claims are defined in this Plan of Reorganization, enumerated as follows:

CLASS 1.       Administrative Expense Claims

CLASS 2.       Claim of First Security Bank

CLASS 3.       Claims of Tax Entities

CLASS 4.       Allowed General Unsecured Claims

The Effective Date of this Plan shall be the first business day of the first full month after an order confirming the Plan is entered.

The length of the Plan shall be two (2) years and shall be known as the reorganization period. It is anticipated and proposed in this Plan that all unsecured creditors shall be paid in full under the Plan of Reorganization.

The Debtor-in-possession is referred to herein as "ALL YOU, LLC", Debtor-in-Possession, or "Debtor" and such reference also incorporated the Debtor's successors and assigns.

      The dates referred to in this plan are based upon the Gregorian calendar wherein the calendar year commences on the 1st day of January and ends on December 31st. The calendar year is divided into four quarters with the first, second and third months of the first full quarter being January, February and March respectively; with the first, second and third months of the second quarter being April, May and June respectively; and the first, second and third months of the third quarter being July, August and September respectively; and the first, second and third months of the fourth quarter being October, November and December respectively.

This Plan of Reorganization is generally referred to herein as "Plan."

The Debtor other than as set forth in this Disclosure Statement and Plan of Reorganization authorizes no representations concerning the Debtor, its assets, liabilities and net worth, if any, or prospects for future business operation or value of their property. Any representations or inducements made to secure your acceptance of the Plan that are other than as contained in this Disclosure Statement should not be relied upon by you in arriving at your decision.

The information contained herein has not been subject to a certified audit by the Debtor's certified public accountants, except as specifically noted. However, Debtor has made a review of its books, records and accounts maintained and prepared pre-petition. For the foregoing reasons, as well as the complexity of the financial affairs of the Debtor, the Debtor is unable to warrant or to represent unqualifiedly and absolutely that the information contained herein is without any inaccuracy, although great effort has been made to be accurate.

PART II

Assignment and Treatment of Classes of Claims

The Debtor proposes the following classification and treatment of claims:

CLASS 1.   ADMINISTRATIVE EXPENSE CLAIMS
           (this is an unimpaired class)

Each holder of an allowed Administrative Expense Claim shall be paid: (i) the full amount of such Allowed Administrative Expense Claim, in cash, without interest, on the later of (a) the Effective date or as soon thereafter as is practicable, or (b) the date on which such Allowed Administrative Expense Claim becomes due and payable pursuant to the terms thereof, the agreement upon which such allowed Administrative Expense Claim is based, or any applicable Final Order; or (ii) in such amount, or on such other date and upon such other terms as may be contained in a Final Order or as agreed upon between the holder of such allowed Administrative Expense Claim and the Debtor. Post-petition expenses incurred in the ordinary course of business are current and shall continue to be paid, post confirmation, pursuant to their credit terms. The Debtor estimates allowed Administrative Expense Claims, net of retainers, at $5,000.00. Post-petition taxes will be treated according to 503(b)(1)(B).

CLASS 2.   CLAIM OF FIRST SECURITY BANK
           (this is an impaired class)

Debtor owes to First Security Bank the approximate sum of $5,797,418.53 which is accruing at 6% interest.

The Debtor shall pay to First Security Bank all monies collected as income from the investment properties except for the $7,000.00 per month as allowed by the Cash Collateral Order previously entered by the Bankruptcy Court. Additionally, upon the sale of any of the properties, all the proceeds

shall be turned over to First Security Bank to pay down the debt obligation. All properties owned by the Debtor shall be sold within the two year plan period except for the 1395 Henri De Tonti property and the 2325 N. College property. Except for 1395 Henri De Tonti property and the 2325 N. College property any property not sold by the Debtor within the two year plan period will be surrendered back to First Security Bank at the end of the plan reorganization period. If First Security has a Buyer interested in any of the properties other than 1395 Henri De Tonti or 2325 N. College, Debtor agrees to sell the property to said Buyer provided the offer for purchase is not less than the appraised value as determined by First Security Bank in the Agreed Disclosure Statement **and** provided it is not less than 10% of the current appraised value at the time that the offer is made. Debtor reserves the right to obtain an independent appraisal at the time said offer is made. If the bank provides a Buyer within these parameters, the Debtor will have 90 days to either refinance the property for the agreed upon amount or find another Buyer willing to pay equal to or greater the amount offered by the Bank's prospective Buyer.

      CLASS 3.      CLAIMS OF TAXING ENTITIES
                       (this is an unimpaired class)

All governmental entities including without limitation entities on the local, state and national level shall be paid when the obligations become due. The Debtor shall maintain proper records and accounting and shall file all necessary reports on a timely basis. If allowed by the respective entity and for good cause, the Debtor may seek various extensions, if needed, to comply with its obligation herein.

If the United States or the State of Arkansas finds the debtor or the successors-in-interest to be in default of the Debtor's obligation under the plan, then the entire imposed liability, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the Debtors or to the successors-in-interest.

If full payment of the plan obligation is not made within 21 days of such demand, then the IRS or Arkansas Department of Finance may collect any unpaid liabilities through the administrative collection provisions of the IRS.

If the Debtor fails to make any payments of any tax to the IRS or Arkansas Department of Finance within 10 days of the due date of such payment, or if the Debtor fails to file any required federal or state tax return by the date of such return, then the United States may declare that the Debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the United States or the State of Arkansas of the right to declare that the Debtor is in default.

If full payment is not made within 21 days of such demand, then the IRS may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code, including but not limited to, the filing of a Notice of Federal Tax Lien and the powers of levy, seizure and sale.

If the United States declares the Debtor to be in default of his obligations under the Plan, then the entire amount still due under the Plan, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the Debtor.

The Reorganized Debtor shall submit all Plan payments for administrative expenses, secured, priority, and general unsecured tax claims and all post-confirmation tax reports and payments due the ADF&A to the following address: Arkansas DF&A, Bankruptcy Section, PO Box 1272, Room 2380, Little Rock, Arkansas 72203.

Notwithstanding any provision to the contrary in the confirmed plan or any modification thereto, the failure of the Reorganized Debtor to submit full and timely plan payments and/or full and timely post-confirmation tax reports and payments shall be events of default under the Plan.

Notwithstanding any provision to the contrary in the confirmed plan or any modification thereto, nothing shall impair the IRS or ADF&A's right of set-off and/or recoupment against the Reorganized Debtor or any non-debtor entity, or any collection remedies it may have against the Debtor or Reorganized Debtor after default under the Plan, or against any other non-debtor entity for the tax liabilities owed the ADF&A at anytime.

AT THIS TIME, THE DEBTOR DOES NOT SHOW ANY AMOUNTS DUE TO THE DEPARTMENT OF FINANCE OR THE IRS.

The Washington County Tax Collector shall be paid in full upon the sale of the properties to which the tax attaches. Once it is determined what part of the taxes owed to Washington County Tax Collector is associated with 1395 Henri De Tonti and 2325 N. College, the Debtor shall pay said taxes in full in 24 equal monthly installments during the two year reorganization period.

CLASS 4. ALLOWED GENERAL UNSECURED CLAIMS
(this is an impaired class)

All valid and allowed unsecured claims will be paid 80% of their claim in the 24th month of the plan of reorganization. These unsecured debts are marked as disputed. The Debtor feels that some of the debt is owed but not in the amount sought by these creditors.

PART III

Classes of Claims Impaired by the Plan

Class 2, and 4 are impaired by this Plan.

PART IV

Treatment of Pre-Petition Tax Claims of Governmental Authorities

The Debtor believes that it is current with their corporate tax returns; however, any deficiencies shall be cured in Class 3 above and as determined by the claim classification, e.g. secured, priority, and unsecured.

4

PART V

Treatment of Unimpaired Claims

All classes in this Plan which are unimpaired shall be treated as outlined in Part II above.

PART VI

Treatment of Impaired Claims

The classes of impaired claims shall be treated pursuant to the provisions of this Plan and as outlined in Part II above.

PART VII

Assumption or Rejection of Executory Contracts and Unexpired Leases

The Debtor assumes the following leases as designated below:

The Debtor has leases as disclosed in schedule G of the Debtor's petition and schedules. All will be assumed. They are Awakening of NW Arkansas, Mandarin Bistro, Flash Market, Flex Staff, and Kitco, Inc..

PART VIII

Timing of Distribution

Payments and distributions in respect of Allowed Claims under the Plan shall be made as mandated under the Plan. Of the effective date, the Debtor will (i) surrender to Secured Creditors any property determined to be unnecessary for reorganization, (ii) pay in full, all allowed Administrative Expense Claims. Distributions to be allowed General Unsecured Claims will be made as designated in Part II above and once (i) all disputed claims in each respective class become either allowed claims or (ii) are disallowed by final order.

PART IX

Unclaimed Funds and Returned Distributions

Any distribution to the holder of an allowed General Unsecured Claim that is unclaimed shall revert after 45 days from the date of distribution to the Debtor. A distribution of funds is unclaimed if, without limitation, the holder of a claim entitled thereto does not cash a check or return a check or if the check mailed to a holder at the address set forth in the Debtor's schedules or set forth in a proof of claim filed by such holder is returned by the United States Postal Service or any other country's postal service as undeliverable.

5

Unless the holder of a claim advises the Debtor or its attorney in writing of a change of address, all distributions or notices shall be sent to the holder at his address as stated in the Debtor's schedules as stated in a properly filed proof of claim or to such creditor's attorney of record in the Chapter 11 case. The Debtor shall have no obligation to locate the holder of a claim whose distribution or notice if properly mailed but nevertheless returned.

PART X

Claims Bar Date

No claims other than those contemplated to be filed pursuant to this Plan shall be accepted after the claims bar date when finally determined. Any claim filed after such time submitted by any creditor will be considered untimely and shall be disallowed. The Debtor seeks a May 20, 2011 claims bar date.

PART XI

Confirmation Standard

The Bankruptcy Court shall confirm a Plan of Reorganization only if all requirements for confirmation set forth at 11 USC Section 1129 are met. Creditors are urged to review the stated provisions and disclosures provided for in this Plan.

PART XII

Confirmation Hearing, Objections to the Disclosure Statement
and / or Plan of Reorganization and Claims Bar Date

April 20, 2011 as the date for the Debtor's hearing on the Plan Confirmation.

Any objection to this Plan of Reorganization shall be made in writing and filed with the following persons or offices and shall be filed by the close of business on April 18, 2011:

1. Clerk, United States Bankruptcy Court, 35 East Mountain Street, Room 316, Fayetteville, Arkansas 72702;

2. Donald A. Brady, Blair, Brady & Henson, 109 N. 34th Street, Rogers, Arkansas 72756;

3. Office of the United States Trustee, Attn: Rick Sforzini, Trial Attorney, 200 West Capitol Avenue, Suite 1200, Little Rock, Arkansas 72201.

PART XIII

Debtor NOT to be Treated as a Small Business

The Debtor is NOT to be treated as a Small Business as defined by 11 USC Section 101(51C) and (51D).

PART XIV

Modifications of the Plan of Reorganization

The Debtor may modify a Plan of Reorganization subject to the restriction set forth in 11 USC 1127.

PART XV

Means for Executing the Plan

The Debtor proposes to implement and consummate the Plan through continued operation of its business. The Debtor is increasing the rental income monthly. The Debtor will sell during the reorganization period all its properties except for the mall at 1396 Henri De Tonti and 2325 North College in Fayetteville. The income from these two properties will continue to be used to pay the debt service to First Security Bank and to fund this Plan. Upon the sale of the other properties, all the proceeds will be paid first to any delinquent real estate taxes and then the remaining proceeds will be paid in full to First Security Bank to lower the debt service to the bank. Any property not sold during the two year reorganization period except for 1396 Henri De Tonti and 2325 North College in Fayetteville will be surrendered back to First Security Bank at the conclusion of the reorganization period.

Part XVI
Liquidation Analysis

The Debtor owes First Security Bank approximately 5.8 million dollars and all other creditors an additional 40 thousand more or less. The value of Debtor's properties total nearly 10.5 million dollars leaving a debt to value ratio of 55%. The Debtor has a substantial equity cushion and in a liquidation, the Debtor would be able to pay all of its debts 100%. The Debtor is seeking an organized liquidation of certain properties to lower its debt service and to maintain the two properties which will generate the most income.

Part XVII
Vesting of Property and Discharge of Debts

The Debtor is seeking a discharge pursuant to 11 USC Section 1141. The Debtor is entitled to a discharge because this is a Plan of Reorganization, not liquidation, and the Debtor's intend to engage in business after the consummation of the Plan.

Except to the extent provided for in this Plan or in the Confirmation Order, upon the effective date, the Debtor shall not be discharged and released for any and all debts and claims arising or incurred prior to the Effective Date unless and until the Debtors complete all payments pursuant to this Plan or as otherwise provided for in 11 USC Section 114.

On the Effective Date of the Plan, all property of the estate, including all causes of action for avoidance of transfers, shall vest in the Debtors and shall be beheld and owned by it free and clear of all liens, claims and interests of all creditors except to the extent provided for in this Plan.

PART XVIII

Request for Confirmation

Debtor requests confirmation of the Plan under Section 1129(b) of the Bankruptcy Code.

It is the Debtor's intent that the Confirmation order shall:

(1) be entered by the Court in form and substance consistent with the Plan and shall not have been reversed, stayed, modified or amended in any material respects prior to the Effective Date:

(2) expressly approve the terms and provisions of the Plan pursuant to 11 USC §1129;

(3) provide for the rejection on the Effective Date of all executor contracts and leases not included in the Estate Assets and otherwise specifically assumed prior to the Confirmation Date;

(4) provide that all sales and transfers of the Estate Assets contemplated by, or provided for, in the Plan shall be free and clear of all transfer and stamp taxes in accordance with Section 11 USC §1146 (c);

(5) provide for the treatments of the Liens and Claims of holders of Allowed Secured Claims and Liens;

(6) authorize and direct the Debtor to perform its obligations under the Plan and to take all actions and execute all documents and instruments reasonably necessary to consummate the transactions contemplated thereby in accordance with the terms thereof;

(7) provide that, upon the Effective Date, the Debtor shall be vested with the rights and powers granted to a trustee under Section 11 USC§1107(a) with respect to the allowance, treatment or avoidance of Liens or Claims to be assumed by the Liquidating Debtor;

(8) provide that the Estate Assets shall be and shall remain free and clear of the Liens, Claims and Equity Interests of any Entity except for those of the respective Creditors and post-confirmation US Trustee fees; and no Entity shall be permitted to execute against or receive distributions from the Debtor except in accordance with the terms of the Confirmation Order and of the Plan;

(9)     provide that the entry of the Confirmation Order shall not have any *res judicata* or other preclusive effect with respect to any claims of the Debtor against third parties that are not specifically and expressly released by the terms of the Plan or Confirmation Order and that the entry of the Confirmation Order shall not be deemed a bar to asserting such claims.

(10)     entitle the Debtor to seek such orders, judgments, injunctions and rulings as each deems necessary to carry out and further the intentions and purposes and to give full effect to the provisions of the Plan.

PART XIX

Jurisdiction

The assets and property of the Debtor shall remain subject to the jurisdiction of the Bankruptcy Court until the Effective Date.  Subsequent to the Effective Date, the Bankruptcy Court shall retain jurisdiction over matters pending on the Effective Date or as set forth in the Confirmation Order.  The Bankruptcy Court shall retain jurisdiction to resolve disputes arising under the Plan for which relief may be granted under the Bankruptcy Code and Bankruptcy Rules.

Until the Effective Date and until the case is closed, the Court shall retain jurisdiction of the proceeding for the purposes set forth in 11 USC Section 11279b) and to:  (a) classify claims of creditors and determine claims and objections thereto as may be filed; (b) the determination of all questions, causes of actions, controversies, disputes, or conflicts between the Debtors, the United States Trustee, any creditors, and any other parties, whether or not subject to a pending motion or action as of the confirmation date; (c) the correction of any defect, the curing of any omission, or the reconciliation of any inconsistencies in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and intent of this Plan, either on Notice or as the Bankruptcy Court shall determine to be appropriate; (d) the modification of this Plan after Confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code; (e) the enforcement and interpretation of the terms and provision of this Plan; (f) the time period fixed for any act or thing under this Plan, on notice or as the Bankruptcy Court may deem appropriate; (g) the entry of any order or injunction necessary to enforce the right, title, interest and power of the Debtor, and to impose such limitations, restrictions, terms and conditions on such right, title, interest and power as the Bankruptcy Court may deem necessary; and (h) the entry of an order closing the Chapter 11 case.

PART XX

United States Trustee's Fees

The Debtor shall comply with 28 USC Section 190(a)(6) which provides for the payment of post confirmation quarterly fees until the case is closed, converted, or dismissed, and the Debtors shall provide post confirmation reporting to the US Trustee's Office until the case is closed, converted, or dismissed pursuant to the regulations of that office.

9

Respectfully submitted this 10th day of March, 2011.

By:    /s/ Don Brady                                  /s/ Hossein Kouchehbagh  
      Don Brady 97-047                         Hossein Kouchehbagh. for Debtor  
      BLAIR, BRADY & HENSON  
      PO Box 1715  
      Rogers, AR 72757  
      479-631-0100  
      479-631-8052 (Fax)

## CERTIFICATE OF SERVICE

On this 10th day of March, 2011, I hereby certify that a copy of the foregoing Plan was sent out to all creditors listed in the Debtor's Petitions and Schedules including the top twenty creditors via the United States Mail, postage prepaid.

                                                        /s/ Don Brady  
                                                        Don Brady